IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA

v. CRIMINAL NO.: 1:08cr381

GOHAR J. MIRZA,

DEFENDANT'S SENTENCING MEMORANDUM AND POSITION
WITH RESPECT TO SENTENCING FACTORS AND MATERIAL FACTS

**INTRODUCTION**

COMES NOW the defendant, Gohar J. Mirza, by counsel, and hereby submits this sentencing memorandum. We respectfully request that the Court sentence Mr. Mirza to a term of probation.

In asking this Court to so sentence Mr. Mirza, we ask the Court to consider the following salient factors, all of which will be addressed in the pages that follow:

The conduct pleaded to was not devised or initiated by Mr. Mirza, who was 29 years old and came to the US in 1999, but rather by his brother, Johar Mirza, who is currently a fugitive from justice. Johar Mirza had come to the United States in 1983 and was the impetus behind the formation of E-star Lending, Inc.

On June 4, 2008, Mr. Berger, one of Mr. Mirza's counsel, was advised by Assistant U. S. Attorney Edmund Power that Gohar Mirza was a target of an

investigation into mortgage fraud in the Eastern District of Virginia. This was immediately communicated to Mr. Mirza while he was in Pakistan.

Despite virtually certain knowledge that he would be charged with a felony upon his return to the United States, Mr. Mirza, who had travelled to Pakistan to visit his father following his father's cardiac surgery, voluntarily returned to the United States to face the charges. He was arrested in the parking lot of Mr. Berger's office, located in Reston, Virginia, on July 11, 2008 and was released on bail on July 17, 2008.

Mr. Mirza's primary motivation to return to United States was to deal with the matter now before this Court and, at the still relatively young age of 29, to try to put his life back in order.

**I. GOHAR J. MIRZA'S BACKGROUND AND CHARACTER**

Mr. Mirza is a 29 year old young man, who has resided in the United States for almost 10 years. But for the matter before this Court, as the many letters of support attached to the Presentence Investigation Report ("Presentence Investigation Report") clearly demonstrate, Mr. Mirza has lead his life in an honorable fashion. He sincerely and deeply regrets the unlawful conduct as his Statement of Acceptance of Responsibility, also before the Court as part of the Presentence Investigation Report, indicates.

## II. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Mirza waived indictment and pleaded guilty to a criminal information which alleged that he had engaged in a conspiracy to commit mail and wire fraud between April, 2005 and July, 2008. The facts of the case are more fully set out in the Criminal Information and the Statement of Facts in support thereof.

## III. COOPERATION

From the outset of this case, Mr. Mirza realized the wrong he had committed and the enormous error in judgment he had made in following his brother's, Johar's, lead. From the outset of his arrest and plea Mr. Mirza gave his whole-hearted cooperation to the Government. He rendered immediate and substantial assistance to the Government in its investigation, and continues to do so. This assistance will be more fully set out at sidebar.

It is respectfully suggested that what distinguishes this case from the many that come before this Court is Mr. Mirza's voluntary return to the United States to face the accusations against him. He did so knowing that arrest, incarceration and deportation were all possible, if not likely.

In the case of *United States v. Crumb*, 902 F.2d 1337 (8th Cir. 1990), the Court of Appeals was faced with the appeal of a grant of a downward departure request which had been based, in substantial part, on the defendant's voluntary surrender. In that case, the defendant was convicted of credit card fraud and was

sentenced to probation. After he violated probation, it was revoked and a warrant was issued. Nine days after his due date, the defendant presented himself at the correction facility and subsequently pleaded guilty to failing to surrender for service of sentence. The District Court granted the defendant a downward departure based upon his self surrender because the surrender contained mitigating circumstances not adequately accounted for under the Sentencing Guidelines. In affirming the decision of the District Court, the Eighth Circuit stated:

> Although the government asserts that Crumb's surrender was not truly voluntary because there was a warrant out for his arrest, we see a meaningful difference between the defendant who voluntarily surrenders himself, albeit knowing that government authorities are searching for him, and the defendant who continues to elude authorities until he is caught, possibly requiring the prolonged involvement of government agents and expenditure of government resources to locate him.

*Crumb*, 902 F.2d at 1339.

In the instant case, Mr. Mirza could simply have elected to remain free in Pakistan, his native country, where many of his family still resides, for the rest of his life, far from the United States criminal justice system. Nonetheless, knowing that he was a target of the Government's investigation, Mr. Mirza stands before the Court today, having voluntarily returned to face the charges. It is noteworthy that his brother, identified in the Presentence Investigation Report and by the Government as the mastermind of the scheme (Presentence Investigation Report, p. 10, para. 20), remains at large and will likely never return to the United States to face

charges. Surely, the Court ought to take into account Mr. Mirza's desire to atone for his sins in determining whether to grant leniency.

**IV. LEGAL STANDARD**

In *Rita v. United States*, 127 S.Ct. 2456, 2474 (2007), Justice Stevens wrote in his concurring opinion: "I trust that those judges who have treated the Guidelines as virtually mandatory during the post-Booker interregnum will now recognize that the Guidelines are truly advisory." The decisions in *Kimbrough v. United States*, 128 S.Ct. 558 (2007) and *Gall v. United States*, 128 S.Ct. 586 (2007) have reinforced Justice Stevens' analysis. Sentencing courts clearly have the authority to fashion the sort of sentence that fits the crime and the individual.[1]

In *Kimbrough*, the court described the role of the Guidelines in relation to 18 U.S.C. § 3553(a):

> The statute, as modified by [*United States v. Booker*, 543 U.S. 220 (2005)], contains an overarching provision instructing district courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing, including "to reflect the

---

[1] At least one Circuit Court Judge has criticized what he sees as a failure of sentencing courts to exercise this still relatively new discretion: "[C]ontinuing under the pretext that the guidelines are only "advisory" instead of being considered only as a starting point against the backdrop of the more sensible and humane penological goals set out in § 3553(a), Title 18. This case is one more example of the continuing problem, the problem of guidelineism, or "guidelinitis," the inability of most federal courts to break their habit of mechanically relying just on the guidelines alone.

*United States v. Sexton*, 512 F.3d 326, 333 (6th Cir. 2008)(Merritt, J. dissenting).

> seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a) (2000 ed. and Supp. V). The statute further provides that, in determining the appropriate sentence, the court should consider a number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the sentencing range established" by the Guidelines, "any pertinent policy statement" issued by the Sentencing Commission pursuant to its statutory authority, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Ibid*. In sum, while the statute still requires a court to give respectful consideration to the Guidelines, see *Gall v. United States*, *ante*, 128 S.Ct. 586, 169 L. Ed. 2d 445, *Booker* "permits the court to tailor the sentence in light of other statutory concerns as well," 543 U.S., at 245-246, 125 S.Ct. 738.

*Kimbrough*, 128 S.Ct. at 570.

In *Gall*, the court rejected the proportionality test that flowed from the holdings of so many circuit courts that had held that an extraordinary departure required "extraordinary circumstances." *Gall*, 128 S.Ct. at 594-595. The court went on to describe the Guidelines as a "starting point," but also emphasized the need for an "individualized assessment":

> As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. See *id.*, 127 S.Ct. 2456, 168 L. Ed. 2d 203. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is

> warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. *Id*., 127 S.Ct. 2456, 168 L. Ed. 2d 203.

*Gall*, 128 S.Ct. at 596-597.

Following *Kimbrough* and *Gall*, in *United States v. Pauley*¸ 511 F.3d 468, 474 (4th Cir. 2007), the Court of Appeals for the Fourth Circuit affirmed the district court's downward variance from the Guidelines as "reasonable and premised on the factors set forth in § 3553(a)." In so doing the court determined that the district court correctly found in the exercise of its discretion that other facts warranted a sentence lower than that recommended by the Guidelines range. In *Pauley*, the Fourth Circuit held that in the post-*Gall* world, that a sentence that constitutes a substantial variance from the Guidelines range need not be justified by extraordinary circumstances so long as the district court cautiously considered all of the relevant § 3553(a) factors in imposing a reasonable sentence. Furthermore, in deciding *Pauley*¸ the Fourth Circuit noted in *Gall* that the Supreme Court held it "quite reasonabl[e]" for the sentencing court to have "attached great weight" to a single factor, in that case and, it is suggested, a highly relevant factor in the instant sentencing, "self-motivated rehabilitation." *Pauley*, 511 F.3d at 476.

"When sentencing a defendant, a district court must: (1) properly calculate

the guideline range; (2) treat the guidelines as advisory; (3) consider the factors set out in 18 U.S.C.A. § 3553(a); and (4) explain its reasons for selecting a sentence." *Pauley*, 511 F.3d at 473. Under § 3553(a), a sentencing court must consider:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;
2) the need for the sentence imposed—
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3) the kinds of sentences available;
4) the kinds of sentence and the sentencing range established by the United States Sentencing Commission;
5) any pertinent policy statement…;
6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

## V. CONSIDERATIONS WARRANTING VARIANCE AND LENIENCY

Section 3553(a)(1) of Title 18 directs the Court to consider, first and foremost, "the nature and circumstances of the offense" and "the history and characteristics of the defendant." It is respectfully suggested that these primary considerations, which are more fully addressed previously, are compelling reasons for leniency in the present case. But for the offenses giving rise to this instant matter, Mr. Mirza has lived an honorable life and the letters of support speak volumes as to his character and positive characteristics and attributes. In consideration of the other 3553(a) factors, it is respectfully suggested that our plea

for leniency rests on ample support.

A. Need for the Sentence Imposed. Section 3553(a)(2) directs the Court to consider the "need for the sentence imposed" in light of four factors. All these factors favor leniency.

B. Seriousness of the Offense, Respect for the Law, and Just Punishment. But for the matter now before this Court, Gohar J. Mirza has led a life of earnest family and honest business pursuits. Mr. Mirza, being painfully aware of the seriousness of the offense, has, if anything, a heightened respect for the law and does not oppose just punishment. It is suggested that for Mr. Mirza having been subjected to criminal prosecution and being required, for the remainder of his life, to acknowledge commission of a federal criminal offense is a very substantial punishment to him, both personally and professionally. The shame he has been subjected to before friends, family and professional associates is immeasurable.

C. Deterrence. The life altering impact of the criminal charge to which Mr. Mirza ("special deterrence") has pleaded guilty, his otherwise lawful past, his clearly-demonstrated willingness to address the charges against him and his efforts to assist the Government in its arrest and prosecution of others constitute more than adequate assurance against future offenses by Mr. Mirza. It is respectfully suggested that the need for general deterrence, although certainly a consideration, needs to be tempered against Mr. Mirza's self-motivated rehabilitative efforts and

in his voluntarily returning to United States to be held accountable for his conduct.

D. Protecting the Public from the Defendant. Mr. Mirza does not present a danger to the public, physically or otherwise.

E. Correctional Treatment for the Defendant. This factor is inapplicable to Mr. Mirza. Mr. Mirza does not require educational or vocational training, medical care, or other correctional treatment.

## VI. POSITION WITH RESPECT TO SENTENCING FACTORS AND MATERIAL FACTS

The Presentence Investigation Report contains the correct calculation of Mr. Mirza's Offense Level Total to be level 26, which corresponds to a Guideline range of 63-78 months of incarceration.

## VII. CONCLUSION

In asking the Court to grant probation, both counsel and Mr. Mirza are well aware of the substantial departure from the guidelines that is being requested. And they are also well aware, and are not asking this Court to ignore, the significance of mortgage fraud in today's economic environment. Rather, in its request for probation, both counsel and Mr. Mirza are respectfully asking the Court to consider the extraordinary affirmative steps which Mr. Mirza has taken to, in essence, voluntarily present himself before this Court for sentencing today. And to also consider, the extraordinary and substantial assistance provided to the Government concerning its ongoing investigation; extraordinary in that it relates to

his own brother and substantial as to its quality and magnitude. To quote the Supreme Court in the *Gall* decision, it is respectfully submitted that "…the justification is sufficiently compelling to support the degree of the variance…" requested. Mr. Mirza respectfully asks the Court to consider the information concerning substantial assistance provided herein, along with the information contained in the Presentence Investigation Report. It is also submitted that a *Gall* / *Pauley* analysis of the 3553(a) factors provides a sufficient factual basis for the Court to vary from the Guidelines and sentence Mr. Mirza to a probationary term. For all the reasons contained in the above referenced submissions to the Court and the attachments thereto, we respectfully request that the Court sentence Mr. Mirza to a term of probation.

Respectfully submitted,

/s/

Thomas K. Berger
Virginia State Bar No. 14127
Co-counsel for Defendant
1760 Reston Parkway, Suite 503
Reston, Virginia 20190-3303
Telephone: 703-736-9500
Facsimile: 703-736-9503
berglaw@verizon.net

Stephen D. Graeff (*Pro Hac Vice*)
Carr, Morris & Graeff, P.C.
Co-counsel for Defendant
1120 G Street, NW, Ste. 930
Washington, DC 20005
Telephone: 202-789-1000
Facsimile: 202-628-3834
sgraeff@cmgpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of December, 2008, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

AUSA Edmund P. Power
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

And I hereby certify that I have e-mailed the document to the following non-filing user:

SUSPO Nina S. Blanchard
United States Probation Office
10500 Battleview Parkway, Suite 100
Manassas, VA 20109

/S/______________
Thomas K. Berger